# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PALOMAR MEDICAL TECHNOLOGIES, INC., <br><br>     Plaintiff, <br><br> v. <br><br> CANDELA CORPORATION, <br><br>     Defendant. | Civil Action No.   06-11400-RWZ |

**CANDELA CORPORATION'S OPPOSITION TO
PALOMAR'S MOTION TO COMPEL PRODUCTION**

**TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................................. 1

II.   PALOMAR'S DEMAND FOR A WIDE-RANGING "SUPPLEMENTATION" OF CANDELA'S DOCUMENT PRODUCTIONS AFTER THE DISCOVERY CUT-OFF CONSTITUTES AN IMPROPER FISHING EXPEDITION ........................... 2

    A.   Palomar Seeks Entirely New Discovery Under the Guise of Supplementation .. 2

    B.   Both Palomar's New Discovery Demand and Its Previous Requests are Grossly Overbroad ................................................................................................. 3

    C.   Fishing Expeditions Are Disfavored ................................................................... 4

III.  THE ADDITIONAL DISCOVERY THAT PALOMAR SEEKS IS NOT RELEVANT OR REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE ........................................................ 4

IV.   IT WOULD BE EXTREMELY (AND UNDULY) BURDENSOME FOR CANDELA TO REVIEW AND PRODUCE THE NEW MATERIALS SOUGHT BY PALOMAR .................................................................................................... 6

V.    CONCLUSION ..................................................................................................... 8

# TABLE OF AUTHORITIES

Page

**Cases**

*Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*,
 244 F.3d 189 (1st Cir. 2001) ............................................................................................. 4

*Aponte-Torres v. Univ. of Puerto Rico*,
 445 F.3d 50 (1st Cir. 2006) ............................................................................................... 4

*Bogosian v. Gulf Oil Corp.*,
 337 F. Supp. 1228 (E.D. Pa. 1971) ................................................................................... 6

*Cavallaro v. United States*,
 153 F. Supp. 2d 52 (D. Mass. 2001) ................................................................................. 8

*Fennell v. First Step Designs*,
 83 F.3d 526 (1st Cir. 1996) ............................................................................................... 8

*Georgia-Pacific Corp. v. U. S. Plywood Corp.*,
 318 F. Supp. 1116 (S.D.N.Y. 1970) ........................................................................ 1, 5, 7

*Heidelberg Ams., Inc. v. Tokyo Kikai Seisakusho, Ltd.*,
 333 F.3d 38 (1st Cir. 2003) ............................................................................................... 5

*Hutchins v. Zoll Med. Corp.*,
 492 F.3d 1377 (Fed. Cir. 2007) ........................................................................................ 5

*Mack v. Great Atl. & Pac. Tea Co.*,
 871 F.2d 179 (1st Cir. 1989) ......................................................................................... 4, 5

*Ranney-Brown Distributors, Inc. v. E.T. Barwick Indus., Inc.*,
 75 F.R.D. 3 (S.D. Ohio 1977) .......................................................................................... 6

*Regan-Touhy v. Walgreen Co.*,
 526 F.3d 641 (10th Cir. 2008) .......................................................................................... 3

*Roche Palo Alto LLC v. Apotex*, *Inc.*,
 531 F.3d 1372 (Fed. Cir. 2008) ........................................................................................ 5

*Seagate Tech., LLC*,
 497 F.3d 1360 (Fed. Cir. 2007) ........................................................................................ 6

**Other Authorities**

Manual for Complex Litigation § 11.443 ...................................................................................... 5

I.  **INTRODUCTION**

Palomar seeks to embark on a post-discovery cut-off fishing expedition for new discovery related primarily to the recent merger and acquisition transaction between Candela Corporation and Syneron Ltd.  It seeks to re-open discovery under the guise of seeking "supplementation" of overbroad and unduly burdensome requests for production to which Candela timely objected.  For example, Palomar seeks: "any documents discussing this lawsuit, Plaintiffs, and/or the patents-in-suit and/or Candela's infringement thereof, including communications in the course of the merger of Candela and Syneron and discussions leading thereto" (Pl.'s Br. at 2, 10.)

Despite repeated requests by Candela, Palomar has been unable to offer any adequate explanation as to why the information it seeks is relevant to the issues currently being litigated.  Indeed, the reasons stated in Palomar's brief indicate that the discovery it seeks is not relevant or likely to lead to the discovery of admissible evidence:  The requests are not reasonably calculated to uncover proof of infringement or willfulness or to address the *Georgia-Pacific* factors that govern the calculation of damages.

The absence of any articulated need by Palomar for the production of such documents must be balanced against the burden to Candela of compiling, reviewing for privilege, and producing the requested materials.  As we explain herein, Palomar's demands would impose a *undue* burden on Candela.  They would require, among other work, processing and review of approximately **60 gigabytes** of uncompressed data—requiring at least **7,800 hours** of attorney time, at a cost of hundreds of thousands of dollars.  The work is particularly burdensome because Candela and Syneron are parties to a joint defense agreement, which requires that all communications between the companies must be reviewed for privilege.

For the reasons discussed herein, Palomar's motion should be denied.

1

## II. PALOMAR'S DEMAND FOR A WIDE-RANGING "SUPPLEMENTATION" OF CANDELA'S DOCUMENT PRODUCTIONS AFTER THE DISCOVERY CUT-OFF CONSTITUTES AN IMPROPER FISHING EXPEDITION

### A. Palomar Seeks Entirely New Discovery Under the Guise of Supplementation

At the February 10, 2010 status conference, the parties each set forth the tasks yet to be completed in this litigation. Candela requested limited discovery related to the re-examination. (Dkt. 126.) Palomar strongly opposed Candela's request, taking the position that "fact discovery in this proceeding closed over a year ago"—and without mentioning that it intended to seek new discovery itself.[1] (Dkt. 125.) The Court denied Candela's request for additional discovery, and set a schedule for completing expert discovery and summary judgment motions.

On March 3, 2010, after having argued that Candela was not entitled to limited additional discovery, Palomar sent a letter to Candela demanding the post-discovery cut-off production of all "Documents discussing this lawsuit, Palomar, MGH, and/or the patents-in-suit and/or Candela's infringement thereof, including but not limited to such documents or communications related to the merger of Candela and Syneron, Inc. and discussions leading thereto." (Pl's Br., Ex. 6 (Dkt. 130-3).)[2]

---

[1] Although Palomar claims that the "supplementation" it seeks is different than what Candela sought (Pl.'s Br. at 9), such is not the case: Candela also has document requests that would encompass the re-examination-related discovery it sought, and what Candela sought was not nearly as wide-ranging as what Palomar now seeks.

[2] Palomar appears to be seeking communications related to the merger between Candela and Syneron while this litigation was stayed. Candela remains unclear as to the scope of Palomar's demands because Palomar failed to hold a pre-filing discovery conference as required by Local Rule 37.1, notwithstanding Candela's repeated statements that it remained willing to discuss and attempt to narrow the disputed issues. (Ray Decl., Ex. A; Dkt. 130-3 at 35, 39.) Palomar's brief does not address its failure to conduct the pre-filing meeting.

2

Palomar's motion argues that it merely is seeking the "supplementation" of responses to existing document requests. Not so. The Syneron-Candela merger transaction is a new, post-discovery cut-off event that was not contemplated by Palomar's discovery requests. (And, as we explain in Section III herein, the merger-related documents also have nothing to do with the specific issues being litigated.)

Palomar's late discovery request is improper. Having said nothing about additional new discovery, Palomar cannot now demand that Candela undertake a burdensome new document production while also completing expert discovery and preparing summary judgment motions. Palomar's motion should therefore be denied.

### B. Both Palomar's New Discovery Demand and Its Previous Requests are Grossly Overbroad

Palomar's motion fails to explain that the underlying document requests for which Palomar now seeks "supplementation" are grossly overbroad and unduly burdensome. Candela timely objected to each of these requests as "overly broad and unduly burdensome, and not reasonably likely to lead to the discovery of admissible evidence," as well as on other grounds. (Pl's Br., Ex. 2 (Dkt. 130-2).) With respect to Request Nos. 51 and 55, Candela also objected that they are "directed to numerous documents that have nothing to do with this action" and agreed only to produce limited categories of documents—limitations about which Palomar did not complain. (*Id.*)

Candela's objections were proper and consistent with well-settled precedent. *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649-50 (10th Cir. 2008) (finding request for "all documents . . . that refer to, mention or relate in any way to Plaintiff, [Defendant's employee], or the litigation or the allegations, facts and circumstances concerning the litigation" overbroad and not stated with "reasonable particularity" as required by the Federal Rules); *see also* Manual for Complex Litigation § 11.443 (4th ed.

3

2004) ("In overseeing document production, the court should . . . prevent indiscriminate, overly broad, or unduly burdensome demands—in general forbid sweeping requests, such as those for 'all documents relating or referring to' an issue, party, or claim.").

Palomar did not move to compel or otherwise address Candela's meritorious objections during the discovery period.  Accordingly, Palomar should not be permitted to use its overbroad and unduly burdensome requests to obtain entirely new discovery after the discovery cut-off.

### C.     Fishing Expeditions Are Disfavored

The breadth of Palomar's demands for virtually "all" documents that refer to Palomar—coupled with Palomar's inability to articulate a specific need for the documents—shows that this is a fishing expedition.  *See, e.g.*, *Aponte-Torres v. Univ. of Puerto Rico*, 445 F.3d 50, 59 (1st Cir. 2006) ("The discovery rules are not intended as a broad license to mount serial fishing expeditions."); *Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 186-87 (1st Cir. 1989) (discussing the problems of "over-discovery" and holding that a party may not "undertake wholly exploratory operations in the vague hope that something helpful will turn up"); *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 193 (1st Cir. 2001) (same; citing *Mack*); *Heidelberg Ams., Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 41 (1st Cir. 2003) ("A litigant may not engage in merely speculative inquiries in the guise of relevant discovery." [quotation omitted]). Palomar seeks to undertake the kind of "wholly exploratory operations" that has been consistently disapproved by the First Circuit and this Court.

### III.    THE ADDITIONAL DISCOVERY THAT PALOMAR SEEKS IS NOT RELEVANT OR REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE

The moving papers and correspondence between the parties leading up to the filing of this motion illustrate that Palomar has not (and cannot) articulate a real need for

4

the "supplemental" discovery it seeks. Palomar asserts generically that the documents may be relevant "to infringement and damages." (*See*, *e.g.*, Dkt. 130-3, Ex. 9.)

As Candela explained in its pre-filing correspondence:

(a) the merger-related documents have nothing to do with the hypothetical negotiation analysis for damages under *Georgia-Pacific*;

(b) infringement is determined by whether the accused devices meet all of the limitations of the asserted claims and not by post-litigation discussions (*Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372 (Fed. Cir. 2008) ("The determination of patent infringement is a two-step process, wherein a court first construes the claims and then determines whether every claim limitation, or its equivalent, is found in the accused device.); *Hutchins v. Zoll Med. Corp.*, 492 F.3d 1377, 1380 (Fed. Cir. 2007) (same)); and

(c) pre- and not post-litigation conduct is relevant to willfulness (*In re Seagate Tech., LLC*, 497 F.3d 1360, 1374 (Fed. Cir. 2007) ("[A] willfulness claim asserted in the original complaint must necessarily be grounded exclusively in the accused infringer's pre-filing conduct.")

(Dkt. 130-3, Ex. 10). Palomar offered no meaningful response; it merely restated its position that the materials are "clearly relevant" (*id.*, Ex. 11).

The documents sought are not relevant, which is underscored by the excerpts of publicly available merger-related documents that Palomar cites in its brief. For example, Palomar points to merger-related documents that refer to:

- Candela's "inability to finance any adverse outcomes";
- discussions of "Candela's potential exposure in the Palomar litigation and Candela's ability to finance any potential adverse outcome;" and
- "the impact of Candela's potential exposure in the Palomar litigation."

5

(Pl.'s Br. at 4.)  Discovery into a defendant's financial status and ability to finance an adverse litigation outcome, however, is irrelevant and improper.  *See, e.g., Ranney-Brown Distribs., Inc. v. E.T. Barwick Indus., Inc.*, 75 F.R.D. 3, 5 (S.D. Ohio 1977) (noting that "Rule 26 will not permit the discovery of facts concerning a defendant's financial status, or ability to satisfy a judgment, since such matters are not relevant, and cannot lead to the discovery of admissible evidence."); *Bogosian v. Gulf Oil Corp.*, 337 F. Supp. 1228 (E.D. Pa. 1971) (same).  In addition, Candela's financial status has nothing to do with a reasonable royalty rate under *Georgia-Pacific* (which focuses on various factors relating to a hypothetical negotiation *at the time of the alleged first infringement*) or with whether or not Candela actually infringed the '844 patent.  *Georgia-Pacific Corp. v. U. S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified and aff'd*, 446 F.2d 295 (2d Cir. 1971), *cert. denied*, 404 U.S. 870 (1971).

Palomar also seeks all documents concerning "discussions with several insurance companies and brokers and other entities regarding the availability of insurance or other risk-limiting mechanisms available to Candela with respect to mitigating potential exposure in the Palomar litigation" and Houlihan Lokey's report on whether insurance could be obtained.  (Pl. Br. at 4-5.)  Whether or not Candela could insure its risks from this litigation also has nothing to do with a damages analysis under the *Georgia-Pacific* factors or with whether Candela infringed the '844 patent.

### IV. IT WOULD BE EXTREMELY (AND UNDULY) BURDENSOME FOR CANDELA TO REVIEW AND PRODUCE THE NEW MATERIALS SOUGHT BY PALOMAR

In order for Candela to produce the documents sought by Palomar, it would have to incur the costs of processing and sorting through at least *60 gigabytes* of uncompressed data for responsiveness and privilege, a volume that would take approximately *7,800 hours to review* based on industry standards at a cost of hundreds of thousands of dollars.

(Ngo Decl. ¶¶ 3-6; Ray Decl. ¶¶ 5-6.)  This information would have to be reviewed for privileged communications related to the ongoing litigation.  (Ray Decl. ¶¶ 4.).  Moreover, production will be further complicated because Syneron and Candela are parties to a joint defense agreement relating to their common interest and legal strategies in defending against Palomar's claims of infringement of the '844 patent.  (*Id.* ¶ 5.)  In addition, privileged information may have been shared during the merger process which, contrary to Palomar's assertions, would remain privileged.  Indeed, Palomar's own authority, *Cavallaro v. United States*, supports Candela's position:  "The weight of the case law suggests that, as a general matter, ***privileged information disclosed during a merger between two unaffiliated businesses would fall within the common-interest doctrine***."  153 F. Supp. 2d 52, 62 (D. Mass. 2001) (internal citations omitted) (emphasis added).  Thus, Candela also would have to conduct a privilege review of all communications between Candela and Syneron.  (Ray Decl. ¶ 6.)

The First Circuit has held that where substantial costs would be involved and the risk of disclosure of privileged information is high, discovery that seeks unspecific and speculative information should be denied.  *Fennell v. First Step Designs, Ltd.,* 83 F.3d 526, 533-34 (1st Cir. 1996) (weighing "substantial risks and costs" of disclosure of privileged information against need for discovery that approached a fishing expedition and affirming order denying discovery).  This is precisely the situation here.  The costs to process and review such large quantities of information would be substantial and the risk of producing privileged documents is high.  And, as discussed above, Palomar's motion seeks irrelevant, unspecific and speculative information.  Palomar's motion should therefore be denied.

## V. CONCLUSION

For the foregoing reasons, Candela respectfully requests that the Court deny Palomar's motion to compel new, post cut-off discovery that has no relevance to the issues being litigated.

Dated: April 19, 2010                                           MORRISON & FOERSTER LLP


By:   /s/ Wendy J. Ray
      Wendy J. Ray (admitted *pro hac vice*)

Attorneys for Defendant
CANDELA CORPORATION

## **CERTIFICATE OF SERVICE**

      I, Wendy J. Ray, hereby certify that a copy of the foregoing document has been served upon all opposing counsel of record by ECF on this 19th day of April, 2010.

/s/  Wendy J. Ray
Wendy J. Ray (admitted *pro hac vice*)
