# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PALOMAR MEDICAL TECHNOLOGIES, INC., and THE GENERAL HOSPITAL CORPORATION,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>CANDELA CORPORATION,<br><br>　　　　　Defendant. | Civil Action No.   06-11400-RWZ |

## DEFENDANT CANDELA CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO STRIKE PORTIONS OF THE DECLARATIONS OF <u>LAWRENCE BASS AND SARAH PETTY</u>

　　　　　　　　　　　　　　　　　　　　CANDELA CORPORATION

　　　　　　　　　　　　　　　　　　　　*By its attorneys*,

　　　　　　　　　　　　　　　　　　　　Anthony L. Press (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　Charles S. Barquist (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　Jill D. Neiman (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　Wendy J. Ray (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　MORRISON & FOERSTER LLP
　　　　　　　　　　　　　　　　　　　　555 W. Fifth Street, Suite 3500
　　　　　　　　　　　　　　　　　　　　Los Angeles, California 90013
　　　　　　　　　　　　　　　　　　　　Ph:   (213) 892-5200

　　　　　　　　　　　　　　　　　　　　Joan M. Griffin (BBO #549522)
　　　　　　　　　　　　　　　　　　　　P.O. BOX 133
　　　　　　　　　　　　　　　　　　　　Dublin, New Hampshire 03444
Dated:  September 10, 2010　　　　　　Ph:   (617) 283-0954

-

## I. INTRODUCTION

"In opposing a motion for summary judgment, a plaintiff must proffer admissible evidence that could be accepted by a rational trier of fact as sufficient to establish the necessary proposition." *Gorski v. N.H. Dep't of Corr.*, 290 F.3d 466, 475-76 (1st Cir. 2002) citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In its opposition to Candela's motion for summary judgment, Palomar offers improper conclusory testimony by a witness who has only once used one of Candela's three devices and several items of unauthenticated evidence, which is not what Palomar says it is. As discussed below, this material is inadmissible and should be stricken.

## II. ARGUMENT

### A. Portions of Dr. Bass' Declaration Should be Stricken

#### 1. Dr. Bass Is Not Sufficiently Familiar with Candela's Devices

An expert must be sufficiently familiar with the accused device. *See Chadwick v. WellPoint, Inc.*, 561 F.3d 38, 49 (1st Cir. 2009) (affirming the lower court's exclusion of an expert's testimony on the basis that the expert's "apparent lack of familiarity with the details of this case rendered her testimony unhelpful to a trier of fact"). Here, Dr. Bass has operated only one of the three Candela accused devices "once or twice" on one occasion; he has never operated the other two accused devices. (Bass Dep., Supp. Ray Dec., Ex. 7 at 7:13-8:24.) Dr. Bass has failed to demonstrate that, based on this brief, one-time use of one of Candela's devices, he is sufficiently familiar with the three different accused devices to be able to render expert testimony that is helpful to a trier of fact. Accordingly, Dr. Bass' conclusions that are based on his "understanding" of Candela's devices in paragraphs 14 and 21 should be stricken.

### 2. Portions of Dr. Bass' Declaration Lack Foundation and Are Impermissibly Conclusory

"Although expert testimony may be more inferential than that of fact witnesses, in order to defeat a motion for summary judgment an expert opinion must be more than a conclusory assertion about ultimate legal issues." *Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, 92 (1st Cir. 1993) (citation omitted). "Where an expert presents 'nothing but conclusions—no facts, no hint of an inferential process, no discussion of hypotheses considered and rejected', such testimony will be insufficient to defeat a motion for summary judgment." *Id.* quoting *Mid-State Fertilizer v. Exch. Nat'l Bank*, 877 F.2d 1333, 1339 (7th Cir. 1989). "Although an expert affidavit need not include details about all of the raw data used to produce a conclusion, or about scientific or other specialized input which might be confusing to a lay person, it must at least include the factual basis and the process of reasoning which makes the conclusion viable in order to defeat a motion for summary judgment." *Id.* As discussed below, Dr. Bass presents nothing but conclusions, with no details whatsoever about his underlying assumptions and reasoning in paragraphs 14, 19, 20, 28, 29, 32-34, and 49 of his declaration, and these paragraphs should therefore be stricken.

In paragraph 14, Dr. Bass states, "Based on my understanding of the way the Candela's [sic] devices work (including my observation of the video produced by Dr. Rohrer and attached as Exhibit 47 to the Declaration of Sarah Beigbeder Petty), cryogen continues to evaporate while the Candela laser is fired, and therefore the Candela devices therefore cool during irradiation." (Bass Dec. ¶ 14.) Dr. Bass offers no explanation exactly what it is that he "understands" about the way Candela's devices work that would lead him to conclude that the devices cool during irradiation. Moreover, he does not describe what he sees in the video that leads him to this conclusion. *See Therasense, Inc. v. Becton, Dickinson & Co.*, 560 F. Supp. 2d 835, 855 (N.D. Cal. 2008), *aff'd*, 593 F.3d 1289 (Fed. Cir. 2010) (excluding expert testimony because an adequate foundation was

not laid where expert did not provide any foundational facts regarding any observations, circumstances, procedures or experimental conditions, "beyond the threadbare assertion in his expert report that he has 'personally observed the accused strips filling. . . .'"). Notably, Dr. Bass does not say that he conducted any test to determine whether cryogen even remains on the skin at the time the laser is fired, or even that he observed such a thing (which in any event cannot be seen with the naked eye). Because Dr. Bass offers nothing but a conclusion in the quoted language from paragraph 14, that language should be stricken.

In paragraph 19, Dr. Bass states, "The Candela distance gauge is placed in contact with the portion of skin from which hairs are to be removed." Dr. Bass, however, offers no basis for his conclusion that the ring of the distance gauge contacts skin from which hairs are to be removed.[1] Significantly, Dr. Bass's ipse dixit conclusory statement does not even attempt to address the fact cited by Candela that the gauge only contacts the portion of skin surrounding, but not including, the portion where hair is to be removed. Because Dr. Bass offers nothing but a conclusion in the quoted language from paragraph 19, that language should be stricken.

In paragraph 20, Dr. Bass states, "Also, due to scattering that occurs within the skin, hair follicles that are located under the distance gauge and might otherwise be blocked from the beam of light are nevertheless irradiated and thermally damaged by the beam. Such scattering causes the effective spot size of the irradiation beam at the depth of the follicles to be larger than the spot size at the skin surface, and therefore covers follicles that are beneath the distance gauge." Dr. Bass, however, does not support this conclusion with any clinical data from patients (either from the one patient he treated or from those treated by others) showing that there is sufficient scattering such that follicles were damaged and hairs were removed under the distance gauge. Nor does he support

---

[1] Presumably, the basis for Dr. Bass' conclusion in paragraph 19 is not scattering because he addresses scattering as an additional reason in paragraph 20.

his conclusion with calculations to show that the fluence under the distance gauge would be sufficient to remove hairs. Indeed, when asked in deposition about whether had performed tests or calculations to support his conclusion, Dr. Bass claimed that he had done some calculations, but that he did not preserve any records of his supposed work. (Bass Dep., Supp. Ray Dec. Ex.. 7, at 253:17-256:16.) When Candela's counsel followed up to obtain any documents that either Palomar or Dr. Bass retained that related to his alleged calculations, Palomar's counsel confirmed that there were none. (Supp. Ray Dec. ¶ 9.) Because Dr. Bass has offered nothing to support his conclusions, paragraph 20 should be stricken.

In paragraph 28, Dr. Bass states, "Tanino does not disclose light-based hair removal, or methods or devices that could be used in performing light-based hair removal." Dr. Bass, however, does not offer any explanation for his conclusion that the Tanino methods and device could not be used in performing light-based hair removal, particularly when its optical parameters are included within the preferred parameters taught in the patent for laser hair removal. For example, Dr. Bass does not say that he ever examined, used or tested the Toshiba laser described in Tanino, so his speculation about what the device could or could not do is unsupported. Because Dr. Bass has offered nothing but his conclusory opinion, paragraph 28 should be stricken.

In paragraph 29, Dr. Bass states, "In my opinion, Tanino does not disclose a system for simultaneous removal of hair "from" the skin. At best, what Tanino discloses is a method of damaging and removing skin (although it contains no mention of removing hair in the process)." Dr. Bass offers no explanation of the basis for this opinion or his inferential process in arriving at this conclusion. Because Dr. Bass has offered nothing but his conclusory opinion, paragraph 29 should be stricken.

In paragraph 32, Dr. Bass states, "Consistent with the methods of treating pigmented lesions available at the time of its publication, Tanino clearly relates treatment of pigmented lesions to creating injury to the skin. For this reason, Tanino could not

remove anything, hair or otherwise, from the skin without removing the skin itself." Dr. Bass again offers no explanation of his inferential process in arriving at his conclusion that Tanino clearly relates treatment of pigmented lesions to creating injury to the skin; he does not point to the portions of Tanino that he believes support this position, nor does he identify the "methods of treating pigmented lesions available at the time of [Tanino's] publication." These conclusory statements therefore should be stricken from paragraph 32.

In paragraph 33, Dr. Bass states, "There is no indication that Tanino ever aimed his laser at skin containing a plurality of hairs that could be removed. Not all human skin has this quality." Dr. Bass offers no basis for his statement that "[n]ot all human skin has this quality." He does not identify what "quality" he is referring to. He also gives no examples of what human skin does or does not have this unidentified quality. Because the second sentence of paragraph 33 is impermissibly conclusory, it should be stricken.

In paragraph 34, Dr. Bass states, "The ruby laser system used by Tanino removes skin, not hair from skin as required by the claims of the '844 patent." Dr. Bass again offers no explanation for this conclusion and does not spell out the process by which he arrived at this conclusion. Paragraph 34, therefore, should be stricken because it is impermissibly conclusory.

In paragraph 49, Dr. Bass states, "Some plastics used in optical radiation have indices of refraction less than 1.5." Dr. Bass does not explain the basis for his knowledge of plastics in optical radiation, if any. He also does not give any examples of plastics with indices of refraction less than 1.5 that he contends are used for optical applications, or provide information about how, if at all, those plastics are used, so that the trier of fact can assess the soundness of his conclusion. Paragraph 49, therefore, also should be stricken because it is impermissibly conclusory.

### B. Certain Exhibits to Ms. Petty's Declaration Should Be Stricken Because They Are Not Authenticated and Are Not What Palomar Purports Them to Be

"Documents supporting or opposing summary judgment must be properly authenticated." *Carmona v. Toledo*, 215 F.3d 124, 131 (1st Cir. 2000) citing Fed. R. Civ. P. 56(e). Rule 56(e) requires that the affidavit be made on personal knowledge, set forth facts that would be admissible in evidence, and show affirmatively that the affiant is competent to testify to the matters stated therein. *Id*. Documents attached to an attorney declaration, where the attorney is not competent to testify as to the matters stated in the documents, are not admissible. *See Kleenit, Inc. v. Sentry Ins. Co.*, 486 F. Supp. 2d 121, 128-29 (D. Mass. 2007) (finding annual reports attached to attorney affidavit inadmissible during the consideration of summary judgment motion for failure to comply with the authenticity requirements of Rule 56(e)).

Here, Palomar has introduced dozens of documents through its attorney, Sarah Petty, who lacks personal knowledge about the documents and is not competent to authenticate them. Palomar has not provided any other testimony by a competent witness authenticating the documents. Each of the documents should be stricken for failure to comply with Rule 56(e), particularly because, as discussed below, the documents are not what Palomar says they are.

Exhibit 10 appears to be a compilation of two Candela webpages and two other unrelated PowerPoint slides. Although Ms. Petty claims that Exhibit 10 is a "document" produced by Palomar, she offers no testimony to authenticate the "document." Palomar points to the second page of Exhibit 10 to support its assertions about the cryogen spray parameters of Candela's devices for hair removal methods. If a competent witness were asked what the first two pages of Exhibit 10 are, however, he or she would have explained that they show the entire range of possible spray parameters for the DCD, but not the particular parameters for hair removal, which are much narrower. (*See* Supp. Hsia Dec. ¶ 2, Exs. 1-3.)

Exhibit 14 is a document which Palomar asserts is a testing document that shows cryogen remaining on the skin during laser irradiation. Again, Palomar presents no competent witness testimony to authenticate Exhibit 14. If a competent witness were asked what Exhibit 14 is, he or she would testify that it is not a testing document that shows cryogen remaining on the skin during laser irradiation. Indeed, there is no skin at all depicted in Exhibit 14. Rather, the document shows a test on black carbon Zap-It paper, using a large amount of cryogen and a very short delay that is never used for hair removal. (Supp. Hsia Dec. ¶ 3.) The photographs show flaming *cryogen gas over* the paper, which is initiated by hot carbon particles ablated from the Zap-It paper, and do not show *liquid cryogen on* the paper. (*Id.*)

Exhibits 15-21 and 33 are excerpts from various marketing documents, for which Palomar proffers no competent witness testimony for authentication. There is no evidence that any of the PowerPoint documents are final documents that were ever presented. Moreover, a competent witness would have testified that many, if not all, of these documents are generated by the marketing department, which consists of non-engineers who make simplified explanations of products to customers.

Exhibits 29-31 are various lens-related documents, which also are not authenticated by a competent witness. Here, if a competent witness had been questioned about these documents, Palomar would have learned that most of the pages of these exhibits relate to lens assemblies that are not used for hair removal. For example, the 3x10 mm and 1.5/3 mm lens assemblies are used solely for vein treatment and are never used for hair removal. (Supp. Hsia Dec. ¶ 8.)

Exhibits 44-47 are unauthenticated videos depicting various Candela products. No witness was asked what the videos depict or the circumstances under which the videos were made. *See Therasense*, 560 F. Supp. 2d at 855 (excluding two video exhibits because the testimony did not describe the videos' origins, the circumstances in which they were made, or what the videos depict.) The videos do not show what Palomar says

they show.  For example, if asked, a witness would have testified that Exhibit 44 shows a treatment using an old model distance gauge made of metal.  (Supp. Hsia Dec. ¶ 5.)  Because the metal got hot, users dipped the gauge in water to cool it before use.  (*Id.*)  The rings on the skin are water deposited by the wet distance gauge.  (*Id.*)  They are not the result of blanching (as evidenced by the lack of a bulge in the middle of the ring and the length of time the rings remain (blanching disappears immediately whereas evaporation takes time); the rings stop appearing later in the video as the water dries off of the gauge.  (*Id.*)  In addition, if asked about Exhibit 47, a witness would have testified that it does not show cryogen on the skin because cryogen is a clear liquid, not the white color seen on the video.  (*Id*. ¶ 6.)  The white color is the result of condensation of atmospheric moisture, which appears white because it has been rapidly cooled by the cold skin, which was previously cooled by the cryogen.  (*Id.*)

As is evident from the discussion above, authentication is particularly important here because the exhibits are not what Palomar purports them to be.  Unauthenticated exhibits 10, 14, 15, 17-21, 29-31, 33, and 44-47 should therefore be stricken.

### C. Candela's 30(b)(6) Testimony Should be Stricken

Palomar relies heavily on the 30(b)(6) deposition testimony of Lou Amberg.  Mr. Amberg was designated to testify on the "*factual bases* for Candela's contention that it has not directly or indirectly infringed" and the "*factual bases* for Candela's contention that the asserted claims of the ""844 . . . are invalid." (Petty Dec., Ex. 2 (emph. added).)  The questions cited by Palomar, however, called for the ultimate legal conclusions of infringement and invalidity—questions that were simply beyond the scope of the topics and that the witness therefore had no duty to answer.  Moreover, Candela timely asserted objections to these topics to the extent they called for legal conclusions or expert testimony. (Supp. Ray Dec. Ex. 6.)  The testimony in response to the improper deposition questions therefore should be stricken.

### III. CONCLUSION

For the foregoing reasons, Candela respectfully requests that its Motion be granted in all respects.

Dated:  September 10, 2010      CANDELA CORPORATION

By its attorneys:

 /s/ Wendy J. Ray
Anthony L. Press (admitted *pro hac vice*)
Charles S. Barquist (admitted *pro hac vice*)
Jill D. Neiman (admitted *pro hac vice*)
Wendy J. Ray (admitted *pro hac vice*)
MORRISON & FOERSTER LLP
555 W. Fifth Street, Suite 3500
Los Angeles, California 90013

Joan M. Griffin (BBO #549522)
P.O. BOX 133
Dublin, New Hampshire 03444

## CERTIFICATE OF SERVICE

I, Wendy J. Ray, hereby certify that a copy of the foregoing document has been served upon all opposing counsel of record, by ECF on this 10th day of September, 2010.

/s/ Wendy J. Ray
Wendy J. Ray