Public Version – Portions of This Document Filed Under Seal Pursuant to Protective Order

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| PALOMAR MEDICAL TECHNOLOGIES, INC. and THE GENERAL HOSPITAL CORPORATION, <br><br> Plaintiffs, <br><br> v. <br><br> CANDELA CORPORATION, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )    C.A. No. 1:06-CV-11400-RWZ <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**PALOMAR MEDICAL TECHNOLOGIES, INC.'S AND THE GENERAL HOSPITAL
CORPORATION'S OPPOSITION TO CANDELA CORPORATION'S MOTION TO
STRIKE PORTIONS OF THE BASS AND PETTY DECLARATIONS**

Public Version – Portions of This Document Filed Under Seal Pursuant to Protective Order

## **Table of Contents**

I.      INTRODUCTION ...................................................................................................1

II.     ARGUMENT ........................................................................................................2

     A.     Neither the Petty Declaration Nor the Exhibits Attached Thereto Should Be Stricken...................................................................................................2

          1.     Candela Does Not Dispute that the Documents Are Authentic, Only that Ms. Petty Is Competent to Authenticate Them............................2

          2.     Attaching Documents to an Attorney Declaration Is the Accepted Mechanism for Introducing Documents On Summary Judgment ..............2

          3.     The Exhibits to the Petty Declaration Satisfy the Requirements of Rule 56(e)..................................................................................................4

               a)     Counsel for Palomar Has Personal Knowledge of Documents Produced by the Parties in this Litigation and Videos Available on Candela's Public Website. ............................4

               b)     Counsel for Palomar Can Authenticate Documents Produced in Discovery for Purposes of Summary Judgment. .........................................................................................5

     B.     The Bass Report Should Not Be Stricken.............................................................11

     C.     The Testimony of Candela's Rule 30(b)(6) Witness Should Not Be Stricken .................................................................................................................17

III.    CONCLUSION.................................................................................................18

Public Version – Portions of This Document Filed Under Seal Pursuant to Protective Order

## Table of Authorities

**Federal Cases**                                                                                      **Page(s)**

*Ambrosini v. Labarraque,*
  966 F.2d 1464 (D.C. ir.1992) ................................................................................... 16

*Anand v. BP W. Coast Prods. LLC,*
  484 F. Supp. 2d 1086 (C.D. Cal. 2007) .................................................................... 7

*Architectural Iron Workers Local No. 63 Welfare Fund v. United Contractors, Inc.,*
  46 F. Supp. 2d 769 (N.D.Ill. 1989) .......................................................................... 7

*B.F. Goodrich v. Betkoski,*
  112 F.3d 88 (2nd Cir. 1997) ..................................................................................... 16

*B.F. Goodrich v. Betkoski,*
  99 F.3d 505 (2d Cir. 1996) ........................................................................................ 16

*Brown v. Wal-Mart Stores, Inc.,*
  402 F. Supp. 2d 303 (D.Me. 2005) ........................................................................... 16

*Burger King Corp. v. Lumbermens Mut. Cas. Co.,*
  410 F. Supp. 2d 1249 (S.D. Fla. 2005) ..................................................................... 11

*Carmona v. Toledo,*
  215 F.3d 124 (1st Cir. 2000) ...................................................................................... 8

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) .................................................................................................... 5

*Chadwick v. WellPoint, Inc.,*
  561 F.3d 38 (1st Cir. 2000) ........................................................................................ 12

*Churches of Christ in Christian Union v. Evangelical Ben. Trust,*
  2009 WL 2146095 (S.D. Ohio Jul. 15, 2009) .............................................. 7, 9, 10

*Commercial Data Servers, Inc. v. International Business Machines Corp.,*
  262 F. Supp. 2d 50 (S.D.N.Y. 2003) ......................................................................... 6

*Cortes-Irizarry v. Corporacion Insular De Seguros,*
  111 F.3d 184 (1st Cir. 1997) ...................................................................................... 15

*DaSilva v. American Brands, Inc.,*
  845 F.2d 356 (1st Cir. 1988) ...................................................................................... 12

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
  509 U.S. 579 (1993) .................................................................................................... 15

ii

Public Version – Portions of This Document Filed Under Seal Pursuant to Protective Order

*Donlen Abrasives, Inc. v. Full Circle Intern., Inc.*,
   667 F. Supp. 2d 1046 (D. Minn. 2009) ........................................................................ 13, 14

*Estes Exp. Lines, Inc. v. Macy's Corporate Services*,
   2010 WL 398749 (D.N.J. Jan. 28, 2010) ................................................................. 2, 4, 5, 7

*Forest Laboratories, Inc. v. Ivax Pharmaceuticals, Inc.*,
   501 F.3d 1263 (Fed. Cir. 2007) .......................................................................................... 17

*Gasser v. Infanti Intern., Inc.*,
   2008 WL 2876531 (E.D.N.Y. Jul .23, 2008) ...................................................................... 3

*Gregg v. Ohio Dept. of Youth Services*,
   661 F.Supp.2d 842 (S.D.Ohio 2009) .................................................................................. 8

*Hawkins v. Trustees of Indiana University*,
   83 F. Supp. 2d 987 (S.D. Ind. 1999) ................................................................................... 7

*i4i Ltd. Partnership v. Microsoft Corp.*,
   598 F.3d 831 (Fed. Cir. 2010) ............................................................................................ 17

*John Beaudette, Inc. v. Sentry Ins. A Mut. Co.*,
   94 F. Supp. 2d 77 (D. Mass. 1999) .................................................................................... 10

*Kleenit, Inc. v. Sentry Ins. Co.*,
   486 F. Supp. 2d 121 (D. Mass. 2007) ............................................................................. 8, 9

*Microfinancial, Inc. v. Premier Holidays Int'l., Inc.*,
   385 F.3d 72 (1st Cir. 2004) ................................................................................................ 12

*New York v. Solvent Chemical Co., Inc.*,
   218 F.Supp.2d 319 (W.D.N.Y. 2002) ............................................................................. 5, 6

*North Trade U.S., Inc. v. Guinness Bass Import Co.*,
   2006 WL 2263885 (D. Conn. Aug. 7, 2006) ................................................................... 3, 6

*One Beacon Ins. Co. v. Electrolux*,
   436 F. Supp. 2d 291 (D.Mass. 2006) ................................................................................ 13

*Otto v. Saia*,
   2007 WL 189854 (W.D.N.Y. Jan. 23, 2007) ..................................................................... 3

*Resolution Trust Corp. v. Marshall*,
   939 F.2d 274, 277 (5th Cir. 1991) ...................................................................................... 6

*Shell Trademark Mgmt. BV v. Ray Thomas Petroleum Co., Inc.*,
   642 F. Supp. 2d 493 (W.D.N.C. 2009) .................................................................... 3, 6, 7, 9

US1DOCS 7666595v2

Public Version – Portions of This Document Filed Under Seal Pursuant to Protective Order

## **Federal Rules**

Fed. R. Civ. P. 30(b)(6) .................................................................................................... 17

Fed. R. Civ. P. 56 ................................................................................................ 1, 2, 4, 8, 11

Fed. R. Evid. 801(d)(2) ......................................................................................................... 2

US1DOCS 7666595v2

Public Version – Portions of This Document Filed Under Seal Pursuant to Protective Order

## I.  INTRODUCTION

Rather than addressing the considerable evidence contained in Plaintiffs' Opposition to Candela's Motion for Summary Judgment on the merits, Candela has instead moved to strike fifteen exhibits to the Declaration of Sarah Beigbeder Petty, portions of the Declaration of Dr. Lawrence Bass, and the deposition testimony of its own 30(b)(6) witness.  (Candela Mot. 1; Candela Br. at 8.)

Candela first argues that the Court should disregard more than a dozen documents attached to Ms. Petty's declaration and produced by Candela in discovery in this litigation. Candela never asserts that the documents are not "authentic" or that they were fabricated in any way, but rather argues that they cannot be "authenticated" by counsel for Plaintiffs.  (Candela Br. at 6.)  As explained below, both the factual and legal premises of Candela's argument are fundamentally flawed.  The documents at issue were unquestionably created by Candela, distributed to the public, and produced in this litigation.  That Candela disputes the way Plaintiffs describe these documents in their brief (Ms. Petty's declaration only refers to documents by Bates number) does not make these documents inauthentic.  Ms. Petty, as counsel for Palomar, also has personal knowledge of documents that were produced in discovery in this case and is competent to authenticate them.  Palomar's use of a well-accepted mechanism to introduce documents on summary judgment – attaching them to an attorney declaration –  fully comports with the requirements of Fed. R. Civ. P. 56.

Candela next argues that Dr. Bass is not familiar with the infringing devices and that portions of his declaration lack foundation and are conclusory.  As explained in detail below, Dr. Bass is indeed sufficiently familiar with Candela's Accused Products to offer his opinions to this Court.  Those opinions, moreover, are well-supported in both his declaration and accompanying exhibits.

1

Public Version – Portions of This Document Filed Under Seal Pursuant to Protective Order

Finally, Candela asks the Court to strike the deposition testimony of its own 30(b)(6) witness on the grounds that the questions and testimony were allegedly outside the scope of the designated topics.  As explained below, counsel's failure to object to any of these questions at Mr. Amberg's deposition shows that the questions were, in fact, squarely within the scope of the noticed topics.

## II.   ARGUMENT

### A.   Neither the Petty Declaration Nor the Exhibits Attached Thereto Should Be Stricken

#### 1.   *Candela Does Not Dispute that the Documents Are Authentic, Only that Ms. Petty Is Competent to Authenticate Them*

Candela seeks to strike certain exhibits to Ms. Petty's declaration on the ground that Ms. Petty, counsel for Palomar, is not competent to authenticate the exhibits and the exhibits are therefore not "admissible in evidence" as required by Fed. R. Civ. P.  56.  (Candela Br. at 6.)  Simply put, this is not, and cannot be, the law.

As an initial matter, Candela never asserts that the exhibits it seeks to strike – all of which were produced by the parties in discovery – are false or fabricated in any way.  Rather, Candela argues that because Ms. Petty is "not competent to testify as to the matters stated in" each of the exhibits, the exhibits are not authentic and should therefore be stricken.[1]

#### 2.   *Attaching Documents to an Attorney Declaration Is the Accepted Mechanism for Introducing Documents On Summary Judgment*

In its brief, Candela takes issue with a well-accepted mechanism for introducing documents on summary judgment: attaching them to an attorney declaration.  *See Estes Exp. Lines, Inc. v. Macy's Corporate Services*, No. 08-cv-3582, 2010 WL 398749 (D.N.J. Jan. 28,

---

[1]      In so arguing, Candela appears to confuse the standards for authenticity and hearsay.  Palomar understands Candela's only objection to be the authenticity of the exhibits.  In any event, the documents and videos produced by Candela are, of course, the admissions of a party opponent and are therefore not hearsay.  *See* Fed. R. Evid. 801(d)(2).

2010) at *5 ("***Plaintiff ignores the reality that filing documents pursuant to attorney declaration is a well established practice***") (emphasis added); *Shell Trademark Mgmt. BV v. Ray Thomas Petroleum Co., Inc.,* 642 F. Supp. 2d 493, 511 (W.D.N.C. 2009); *Otto v. Saia*, No, 04-cv-494, 2007 WL 189854 at *5 (W.D.N.Y. Jan. 23, 2007)  ("***An attorney's affidavit can be used to introduce documents and is a common device in summary judgment motions performing that function***.") (emphasis added); *North Trade U.S., Inc. v. Guinness Bass Import Co*., No. 3:03-cv-1892, 2006 WL 2263885 at * 3 (D. Conn. Aug. 7, 2006) ("The exhibits attached to Attorney Cummings' declaration are also permissible."); *Gasser v. Infanti Intern., Inc*., No. 03-cv-6413n 2008 WL 2876531 (E.D.N.Y. Jul. 23, 2008) at * 7 (denying motion to strike attorney affidavit) ("Therefore, the Court finds that the Spizz Affidavit was merely a vehicle placing before the Court relevant, admissible documents and the relevant portions of sworn testimony of witnesses with personal knowledge*.* The Spizz Affidavit is not being presented to a jury, and the Court can draw its own conclusions based on th[e] evidence") (internal citations omitted).

Indeed, Candela itself used precisely this procedure (and exactly the same language used by Palomar) when it attached an excerpt from the Brief of Defendants-Appellees in *MEHL/Biophile Int'l Corp. v. Milgraum* as Exhibit 5 to the Declaration of Wendy J. Ray. (Docket No. 148 at 1 ("Attached as Exhibit 5 is a true and correct copy of an excerpt from Brief of Defendants-Appellees in *MEHL/Biophile Int'l Corp. v. Milgraum*, No. 99-1038 (Fed. Cir. Mar. 1, 1999).").  Ms. Ray certainly did not have "personal knowledge" of the brief from a case in which she was not involved but nonetheless attached it to her declaration.

Under the logic of Candela's motion to strike, any document produced by an opposing party that would be admissible at trial via cross-examination would nonetheless be unavailable

3

Public Version – Portions of This Document Filed Under Seal Pursuant to Protective Order

for use in summary judgment proceedings absent the deposition testimony of the author of the document.  This, of course, is not the law.

        3.      *The Exhibits to the Petty Declaration Satisfy the Requirements of Rule 56(e)*

The Petty Declaration was made by an affiant with personal knowledge and attaches authentic, admissible documents that were produced in discovery by the parties to this litigation or otherwise made available to the public.  The Petty Declaration and Exhibits 10, 14-15, 17-21, 29-31, 33, and 44-47 therefore satisfy the requirements of Fed. R. of Civ. P. 56(e).  Rule 56(e) states:

> (1) In General. A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit. The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.

Fed. R. Civ. P. 56(e).

        a)      Counsel for Palomar Has Personal Knowledge of Documents Produced by the Parties in this Litigation and Videos Available on Candela's Public Website.

The Petty Declaration simply states that attached to the declaration are "true and correct cop[ies]" of "document[s] produced by Candela in this litigation," and then identifies the Bates numbers for each exhibit.  (*See, e.g.*, Petty Decl. ¶ 24 ("Attached hereto as Exhibit 22 is a true and correct copy of a document produced by Candela in this litigation, at Bates numbers CANMA000784-795").)  The declaration does not characterize the documents in any other way.  As an attorney for Palomar, Ms. Petty of course has personal knowledge of documents that were produced in discovery by the parties.  *Estes*, 2010 WL 398749 at *5 (denying motion to strike documents appended to attorney declaration, and holding, "[Attorney] May is not attesting to the

facts contained within the attached documents, but merely offering true and accurate copies of documents produced in discovery. ***Surely, May has personal knowledge as to whether he has submitted true and accurate copies of documents produced in discovery.***") (emphasis added); *New York v. Solvent Chemical Co., Inc*., 218 F. Supp. 2d 319, 331 (W.D.N.Y. 2002) ("In her affidavits, ***[Attorney] Joyce is not testifying as to facts at issue in this case. Her affidavits are vehicles placing before the court relevant, admissible documents and the relevant portions of sworn testimony of witnesses with personal knowledge. Given the complexity of this case, and the numerous documents and many pages of testimony that have been generated during the discovery process, Ms. Joyce's affidavits present the evidence in a cohesive manner***….The documents attached to the Joyce affidavits were ***created as part of the litigation (e.g., discovery materials), with which attorney Joyce is familiar.***  In addition, the court agrees with Solvent that the case law pillar of the summary judgment standard, *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), allows a degree of attorney characterization in its instruction that a party explain the basis for its motion and identify the relevant evidence supporting its evidence.") (emphasis added).

In addition to the paper documents attached as Exhibits 10, 14-15, 17-21, 29-31 and 33 to the Petty Declaration, the videos to which Candela objects (three of which are [or were] available on Candela's website) were also produced in this litigation:  Exhibits 44-46 were produced by Palomar at Bates number PAL163054 and Exhibit 47 was produced by Candela's retained expert Dr. Rohrer as Rohrer0001 pursuant to a subpoena.

> b)      Counsel for Palomar Can Authenticate Documents Produced in
>         Discovery for Purposes of Summary Judgment.

It is well-established that an attorney may authenticate documents produced in discovery for purposes of summary judgment.  *See Estes*, 2010 WL 398749 at *5 (denying motion to strike

Public Version – Portions of This Document Filed Under Seal Pursuant to Protective Order

exhibits attached to attorney declaration for lack of authenticity or lack of personal knowledge where documents at issue were produced in discovery);  *Shell*, 642 F. Supp. 2d at 511 (denying motion to strike and holding, "***An attorney is an appropriate source to authenticate documents received in discovery****…*RTP would have raised authenticity concerns when it produced its documents if it had any...These documents are fully authenticated and having an attorney for Motiva provide the declaration with the documents was appropriate.") (internal citations omitted; emphasis added); *Commercial Data Servers, Inc. v. International Business Machines Corp.*, 262 F. Supp. 2d 50, 60 (S.D.N.Y. 2003) *(*denying motion to strike exhibits attached to attorney declaration on motion for summary judgment) ("***It is disingenuous and wasteful for plaintiff to object that its own documents are not authenticated, and thus inadmissible at trial and on summary judgment. The appearance of these documents and the circumstances surrounding this motion-most importantly the fact that the plaintiff is in the best position to know if they are authentic and that they have never claimed that they are not - show that these are authentic documents***.");  *North Trade*, 2006 WL 2263885 at * 2 (denying motion to strike exhibits attached to attorney affidavit on summary judgment) ("Counsel may present admissible evidence in an affidavit where the evidence relates to items in the case, ***such as items in the record or items produced in discovery***.") (emphasis added); *Resolution Trust Corp. v. Marshall*, 939 F.2d 274, 277 (5th Cir. 1991) (finding documents sufficiently authenticated after attorney submitted an affidavit verifying their authenticity);  *New York v. Solvent,* 218 F. Supp. 2d at 331 (denying motion to strike attorney affidavit attaching discovery materials) ("In her affidavits, Ms. Joyce is not testifying as to facts at issue in this case. Her affidavits are vehicles placing before the court relevant, admissible documents and the relevant portions of sworn testimony of witnesses with personal knowledge. Given the complexity of this case, and the numerous

Public Version – Portions of This Document Filed Under Seal Pursuant to Protective Order

documents and many pages of testimony that have been generated during the discovery process, Ms. Joyce's affidavits present the evidence in a cohesive manner. The documents attached to the Joyce affidavits were created as part of the litigation (e.g., discovery materials), with which attorney Joyce is familiar.")

In fact, many courts have gone so far as to hold that documents produced in discovery are self-authenticating for purposes of summary judgment. *See Estes*, 2010 WL 398749 at *5 ("Documents produced in response to discovery requests are admissible on a motion for summary judgment since they are self-authenticating"); *Anand v. BP W. Coast Prods. LLC*, 484 F. Supp. 2d 1086, 1092 n. 11 (C.D. Cal. 2007) (same); *Shell*, 642 F. Supp. 2d at 511 ("***Importantly, documents produced in response to discovery requests are admissible on a motion for summary judgment since they are self-authenticating and constitute the admissions of a party opponent***.") (emphasis added); *Hawkins v. Trustees of Indiana University*, 83 F. Supp. 2d 987, 1000 n.2 (S.D. Ind. 1999) ("For purposes of this summary judgment motion, the Court will follow the rationale of *In re Greenwood Air Crash*, that relies on the Seventh Circuit's opinion in Brown, and ***find the documents authenticated by production in response to a discovery request accompanied by an attorney's affidavit that those are the documents requested***."); *Architectural Iron Workers Local No. 63 Welfare Fund v. United Contractors, Inc*., 46 F. Supp. 2d 769, 772 (N.D. Ill. 1989) (finding "documents produced in response to discovery are self-authenticating ... there is no error to admit as evidence documents that Defendants themselves possess and produced in response to Plaintiff's requests for production of documents"); *Churches of Christ in Christian Union v. Evangelical Ben. Trust*, No. C2-07-cv-1186, 2009 WL 2146095 at * 5-6 (S.D. Ohio Jul. 15, 2009) (" Exhibits 6A, 6B, 16, 18, 19, 20A, 20B, 20C, and 21 were drafted by and produced by Defendants….Where a document is produced

7

Public Version – Portions of This Document Filed Under Seal Pursuant to Protective Order

in discovery, "there [is] sufficient circumstantial evidence to support its authenticity" at trial…. Exhibits 6A, 6B, 16, 18, 19, 20A, 20B, 20C, and 21 were all created by Defendants and were all produced in response to discovery requests. Furthermore, CCCU has submitted as Exhibit 25 an affidavit from its counsel that these exhibits are true and correct copies of the documents produced by Defendants. These exhibits are self-authenticating and therefore, admissible. Defendants' Motion to Strike Unauthenticated Exhibits is DENIED") (internal citations and quotations omitted); *Gregg v. Ohio Dept. of Youth Services*, 661 F. Supp. 2d 842, 853 (S.D.Ohio 2009) (finding documents produced in discovery to be authentic).

Again, Candela never asserts that any of the documents at issue were false, fabricated, forged, or in any other way not substantively authentic.  Candela's argument about the interpretation or meaning of the documents is not a matter of "authenticity."

In support of its argument that Ms. Petty cannot authenticate documents produced by Candela in discovery, Candela relies on *Carmona v. Toledo*, 215 F.3d 124, 131 (1st Cir. 2000) and *Kleenit, Inc. v. Sentry Ins. Co*., 486 F. Supp. 2d 121, 128-29 (D. Mass. 2007).  The circumstances presented in those cases were quite different from the circumstances present here. In *Carmona*, for instance, the documents at issue were simply appended to a motion, and not attached to any affidavit at all.  *Carmona*, 215 F.3d at 131 ("The supervisors did not file an authenticating affidavit complying with Rule 56(e) to support their summary judgment motion. Rather, they simply appended a purported copy of the investigation file - unsworn, uncertified, and, at first, untranslated - to the motion").  In *Kleenit*, the actual authenticity – not just the legal authentication – of the documents at issue was called into question.  The documents that the court declined to consider on authenticity grounds purported to be excerpts from the Plaintiff's annual reports.  The appended exhibits, however, contained no cover pages or Bates numbers

8

Public Version – Portions of This Document Filed Under Seal Pursuant to Protective Order

indicating that the documents had ever been produced in discovery and in fact contained unidentified handwriting at the top titling the document "Bubble-It" Annual Report (the plaintiff's name was "Kleenit," not "Bubble-It").   *See Kleenit*, C. A. No. 1:03-cv-10351-RBC, Docket No. 106-3, pages 26-28 (Tabs 5 and 6).   As Court noted, nothing in the exhibits connected the attached pages to the plaintiff ("In fact, the page from the annual report refers to companies called "Bubble-it" and "Care Cleaners."…Kleenit points to nothing in the record to support a connection between Kleenit and these other companies.").   *Kleenit*, 486 F. Supp. 2d at 128 n.1.  Moreover, nothing in the record indicated that the alleged annual report pages were ever produced during discovery.  Both *Carmona* and *Kleenit* are therefore easily distinguishable from the present case.

In any event, Candela cannot fairly dispute that the documents at issue – including Candela's **own** documents --  are "authentic."  *See, e.g.*, *Shell.*, 642 F. Supp. 2d at 511 (citing to *Commercial Data*, 262 F. Supp. 2d at 60) ("***It is disingenuous and wasteful for plaintiff to object that its own documents are not authenticated, and thus inadmissible at trial and on summary judgment. The appearance of these documents and the circumstances surrounding this motion-most importantly the fact that the plaintiff is in the best position to know if they are authentic and that they have never claimed that they are not-show that these are authentic documents")** (emphasis added); *Churches of Christ*, 2009 WL 2146095 at * 5 ("In *U.S. v. Cinergy Corp.*, the court found that for summary judgment purposes, "it is disingenuous for Cinergy to object to copies of documents that it produced to Plaintiffs pursuant to discovery requests.") (internal citations omitted).

Every document or video at issue was produced by the parties in discovery.  The vast majority – specifically, Exhibits 14, 15, 17-21, 29-31, and 33 – were produced by Candela itself.

Public Version – Portions of This Document Filed Under Seal Pursuant to Protective Order

Many of these documents were re-authenticated during depositions of Candela witnesses.  (*See,*

*e.g.*, Chaudhary Decl. Ex. A [Johnson Dep.] at 89:24-90:14 (██████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████) (objections omitted); Chaudhary

Decl. Ex. B [McGrail Dep.] at 95:15-23 (██████████████████████████████

████████████) Exhibit 47 was produced by Candela's retained expert in this litigation, via

Candela's counsel.  Exhibit 10, which was produced by Palomar, clearly bears a Candela logo at

the top and a Candela website address at the bottom.  Exhibits 44-46 – the videos of Candela's

products from its website -- were produced by Palomar in discovery, and, as of the date of the

summary judgment hearing, they were still available at their original location on Candela's

website.

"The standard for a preliminary showing of authenticity under Rule 901 is the presence of

sufficient evidence for a reasonable person to determine "that the evidence is what it purports to

be." *John Beaudette, Inc. v. Sentry Ins. A Mut. Co.*, 94 F. Supp. 2d 77, 89 (D. Mass. 1999).

Palomar has more than met this standard.  *See also, e.g., Churches of Christ*, 2009 WL 2146095

at * 5 ("We have repeatedly noted that the burden of proof for authentication is slight… The

showing of authenticity is not on a par with more technical evidentiary rules, such as hearsay

exceptions, governing admissibility. Rather, there need be only a prima facie showing, to the

court, of authenticity, not a full argument on admissibility. Once a prima facie case is made, the

evidence goes to the jury and it is the jury who will ultimately determine the authenticity of the

Public Version – Portions of This Document Filed Under Seal Pursuant to Protective Order

evidence, not the court" (internal citations and quotations omitted); *Burger King Corp. v.*

*Lumbermens Mut. Cas. Co.*, 410 F. Supp. 2d 1249, 1255 (S.D. Fla. 2005) (finding documents

produced in discovery and attached to attorney declaration on summary judgment sufficient to

satisfy Rule 56(e) and noting, "Additionally, even if some of these documents were not properly

authenticated at this time, the Court could still consider them at the summary judgment stage if

"it finds that those records could be reduced to admissible evidence at trial…. Given the nature

of the challenged documents, the Court finds that they could easily be authenticated and rendered

admissible at trial. Accordingly, BKC's Motion to Strike must be denied.") (internal citations

omitted).  Accordingly, Candela's Motion to Strike Exhibits 10, 14, 15, 17-21, 29-31, 33, and

44-47 to the Declaration of Sarah Beigbeder Petty should be denied.

     **B.**     **The Bass Report Should Not Be Stricken**

          1.     *Dr. Bass is Sufficiently Familiar with the Accused Products to Offer Expert Testimony*

Candela further contends that Dr. Bass is not sufficiently familiar with Candela's

infringing devices to offer competent expert testimony.  (Candela Br. at 1.)  This is not true.  Dr.

Bass is an expert in the relevant fields of medical lasers and light-based hair removal; his

expertise in these areas is well-established and undisputed.  His declaration and expert reports

describe the application of that knowledge and expertise to his assessment of Candela's

infringing devices.

Dr. Bass has sufficient experience with the accused products to support his opinions in

this case.  Dr. Bass "personally used the GentleLASE™ product to perform hair removal

treatment" and "performed an evaluation and experiments using the housing and lenses of

Candela's GentleLASE™, GentleYAG™, and GentleMAX™ products to verify the structure

and operation of the handpieces." (Bass Decl. Ex. 2 [Expert Report of Dr. Lawrence S. Bass on

Infringement ("Bass Rep.")] ¶ 7.)  Moreover, had Candela included the entirety of Dr. Bass's

deposition testimony in its motion, the careful evaluation performed Dr. Bass during his use of

the product would be clear.  (*See* Chaudhary Decl., Ex. C [Deposition of Dr. Lawrence Bass

("Bass Dep.")] at 8:18-10:12) ("I made multiple assessments of how the device functioned, what

the ergonomics of handling the applicator was, other matters of that sort related to performing

treatments and operating the system"; "I was able to observe the tissue effects on multiple

occasions since then in terms of assign the – any skin response or any hair response at least

within the context of that single treatment.").)

Notably, the only case cited by Candela in support of its contention, *Chadwick v.

WellPoint, Inc.*, 561 F.3d 38 (1st Cir. 2000), is entirely inapposite.  In that case, the Court

excluded expert testimony from a sociologist regarding what defendant's employees meant,

"consciously or unconsciously", in using certain words with a subordinate.  *Id*. at 48.  The lower

court emphasized that the expert was unfamiliar with the details of the case, had failed to read

relevant deposition testimony, and was unfamiliar with the plaintiff's background.  *Id.* at 49 fn.

13.  Dr. Bass, in contrast, is well-educated on the claims of the patent-in-suit, Candela's Accused

Products, and the facts in the instant case.

Even if Dr. Bass had ***never*** used Candela's products (which is not true here) his opinions

nevertheless would be admissible.  "When, as in this case, an expert is qualified ... by

knowledge, skill, experience, training, or education, Fed. R. Evid. 702, he need not have had

first-hand dealings with the precise type of event that is at issue."  *Microfinancial, Inc. v.

Premier Holidays Int'l., Inc.,* 385 F.3d 72, 80 (1st Cir. 2004) (internal citation and quotation

marks omitted).  *See also DaSilva v. American Brands, Inc.*, 845 F.2d 356, 361 (1st Cir. 1988)

(expert need not possess design experience with respect to specific machine to be qualified to

testify about its design); *One Beacon Ins. Co. v. Electrolux*, 436 F. Supp. 2d 291, 299 (D.Mass. 2006) ("While lacking detailed expertise in electrical dryers, Fain possesses sufficient expertise to testify regarding the design, manufacture, assembly, repair and operations of dryers.  Rule 702 is not so wooden as to demand an intimate level of familiarity with every component of a transaction or device as a prerequisite to offering expert testimony.") (quotation marks and citation omitted); *Donlen Abrasives, Inc. v. Full Circle Intern., Inc.*, 667 F. Supp. 2d 1046, 1056 (D. Minn. 2009) (rejecting defendant's argument that expert testimony should be excluded because expert had never used the accused product and further noting that "[a]lthough Launderville admitted that he had never used the Flex Edge system, Launderville stated that he observed a demonstration of the Flex Edge, examined the Flex Angle sanding pad, and concluded on the basis of those observations that the accused product is insubstantially different from the patent claims.").

2.      *Dr. Bass's Declaration is Properly Supported*

Dr. Bass's declaration and the five expert reports he prepared in this case (and incorporated into his declaration) include extensive discussion of Candela's Accused Products as well as the foundation for the specific opinions Candela challenges here.  Dr. Bass's opinions can hardly be characterized as comprised only of "conclusory allegations."

Dr. Bass, for example, provides ample support for his conclusion in paragraph 14 that the cryogen used in Candela's products evaporates and cools the skin during irradiation.  Dr. Bass explains that "Candela's devices cool during irradiation by applying cryogen to the skin immediately prior to firing the laser."  (Bass. Decl. ¶ 14.)  Because "[b]oth the amount of cryogen sprayed and the delay between the cryogen spray and the laser pulse are adjustable," "[t]he greater amount of cryogen delivered to the skin, and the shorter the delay between the

13

Public Version – Portions of This Document Filed Under Seal Pursuant to Protective Order

cessation of the cryogen spray and the laser pulse, the more cryogen will remain on the skin during irradiation.  Cryogen remaining on the skin continues to cool as it evaporates." (*Id.*)  Dr. Bass goes on to reference his understanding of "the way Candela's devices work" and Dr. Rohrer's video as providing support for his conclusion that the cryogen used by Candela's products cools during irradiation.  (*Id.*)  Dr. Bass's understanding of Candela's devices and how they cool is detailed in the expert reports incorporated into his declaration.  (*See* Bass. Decl. Ex. 2 [Bass Rep.] ¶¶ 64-108 (discussing the design and operation of Candela's devices and why they infringe the patent-in-suit); Bass Decl. Ex. 4 [Bass Reply Rep.] ¶¶ 16-17 (discussing the properties of cryogen, the timing of the cryogen spray, and documents produced by Candela to support his opinion on cooling); Bass Decl. Ex. 5 [Bass Supp. Rep. on Infringement] ¶¶ 74-75, 86-88 (discussing the Accused Products' use of cryogen spray to cool), Appendix A (detailing patent's claims on cooling and how Candela's products infringe by cooling before and during irradiation).)

Dr. Bass's opinions on the contact of the accused products' distance gauge with the skin from which hairs are to be removed (paragraph 19) and scattering of light within the skin (paragraph 20) are similarly well-supported in his declaration and expert reports.  (*See, e.g.,* Bass. Decl. Ex. 2 [Bass Rep.] ¶¶ 75, 92-96 (describing how Candela's applicator is designed for "contacting the skin region containing a plurality of hairs to be removed" and supporting observations, including videos of the products use from Candela's website showing contact and pressure); Bass Decl. Ex. 4 [Bass Reply Rep. on Infringement] ¶¶ 10-15 (discussing applicator contact with the skin surface and citing deposition testimony from Candela witnesses and documents produced by Candela; further discussing scattering of light and citing deposition testimony from Candela witnesses and documents produced by Candela in support of opinion),

14

Public Version – Portions of This Document Filed Under Seal Pursuant to Protective Order

Bass Decl. Ex. 5 [Bass Supp. Rep. on Infringement] ¶¶ 80-81 (describing the design/function of the distance gauge); 89-98 (describing the foundation for his opinion that the distance gauge contacts and applies pressure to the skin); Appendix A (same).)

Candela suggests that this Court should exclude Dr. Bass's opinions because he has not offered specific test results in support of his conclusions. *First*, to the extent Candela suggests that Dr. Bass should have conducted his own experiments to support his interpretation of the cooling depicted in Dr. Rohrer's video, it bears noting that after a full month of efforts by Plaintiffs to secure Dr. Rohrer's videos from Candela – including a subpoena and numerous follow-up e-mails – Candela only produced Dr. Rohrer's video on August 30, two days before Plaintiffs' opposition was due to this Court. *Second*, Dr. Bass need not offer test results to establish his opinions, particularly in the context of an opposition to summary judgment. Candela's misunderstands the standard by which the Court evaluates Dr. Bass's opinions. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993) ("[A]n expert is permitted ***wide latitude*** to offer opinions, including those that are not based on firsthand knowledge or observation….this...is premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline.") (emphasis added); *Cortes-Irizarry v. Corporacion Insular De Seguros*, 111 F.3d 184, 188 (1st Cir. 1997) ("[C]ourts will be hard-pressed in all but the most clearcut cases to gauge the reliability of expert proof on a truncated record…the summary judgment process does not conform well to the discipline that *Daubert* imposes.")

Candela's contentions regarding Dr. Bass's opinions on the Tanino reference are similarly futile.  In paragraphs 23 to 46 of his declaration, Dr. Bass establishes relevant background facts about laser hair removal based on his experience in the field, describes the

Public Version – Portions of This Document Filed Under Seal Pursuant to Protective Order

limits of the Tanino reference, and discusses similar prior art that suffers from the same problems

(and uses the same or similar lasers) as Tanino.  (Bass Decl. ¶¶ 23-26.)  The Tanino, Ohshiro and

Nakaoka references are all analyzed by Dr. Bass and attached as exhibits to his declaration.

(Bass Decl. Exs. 7-9.)  Dr. Bass's expert reports in this case, also attached, further describe how

Tanino fails to anticipate the patent-in-suit (*See* Bass Decl. Ex. 3 [Bass Rebuttal Rep. on

Validity] ¶¶ 11-30 (describing the state of the art at the time of the invention); Bass Decl., Ex. 6

[Bass Supp. Rep.] ¶¶ 32-38; 46-49; 50-55 (discussing the Tanino, Nakaoka, and Ohshiro prior art

references).)  Candela's efforts to exclude paragraphs 28, 29, 32, 33, and 34 should also be

rejected.[2]

Finally, if Candela doubts the foundation underlying Dr. Bass's opinions, Candela will

have ample opportunity to cross-examine him at trial.  *See B.F. Goodrich v. Betkoski*, 99 F.3d

505, 525-26 (2d Cir. 1996)**,** *decision clarified*, *B.F. Goodrich v. Betkoski*, 112 F.3d 88 (2nd Cir.

1997) (rejecting a motion to exclude an expert declaration presented at summary judgment and

noting that "if the appellees honestly believe this scientific evidence is weak, they should cross-

examine him vigorously at trial and present contrary evidence to refute his findings and

conclusions.  This is the traditional and appropriate means of attacking admissible evidence with

which one disagrees.") (citation omitted); *Brown v. Wal-Mart Stores, Inc.*, 402 F. Supp. 2d 303,

308 (D.Me. 2005) ("As a general rule, the factual basis of an expert opinion goes to the

credibility of the testimony, not the admissibility, and it is up to the opposing party to examine

the factual basis for the opinion in cross-examination.") (citation omitted).

---

[2]     Candela further challenges Dr. Bass's statement in paragraph 49 that some plastics used in optical radiation have indices of refraction less than 1.5.  That statement is supported by Dr. Bass's expertise with medical devices and lasers and is made in response to Candela's statement of facts. (*See, e.g. Ambrosini v. Labarraque,* 966 F.2d 1464, 1469 (D.C. ir.1992) (holding that an expert' testimony, in order to be admissible under Rule 705, need not detail all the facts and data underlying his opinion in order to present that opinion.)

Public Version – Portions of This Document Filed Under Seal Pursuant to Protective Order

Accordingly, this Court should deny Candela's Motion to Strike portions of the Declaration of Dr. Lawrence Bass.

### C.     The Testimony of Candela's Rule 30(b)(6) Witness Should Not Be Stricken

Finally, Candela asks the Court to strike the deposition testimony of its own 30(b)(6) witness.  Candela does not specifically identify which portions of the cited testimony it seeks to strike but asserts that the questions and testimony "cited by Palomar" were outside the scope of the designated topics.  (Candela Br. at 8.)   Candela designated Mr. Louis Amberg to testify pursuant to Fed. R. Civ. Proc. 30(b)(6) with respect to "[t]he factual bases for Candela's contention that it has not directly or indirectly infringed and is not directly infringing any claim of the '844 and/or '568 patents" and "[t]he factual bases for Candela's contention that the asserted claims of the '844 and/or '568 patents are invalid and/or unenforceable."  Mr. Amberg testified that he understood he was designated to testify on these topics.  (Petty Decl., Ex. 3 at 17:11-20:10.)  Mr. Amberg was then asked, "Do you know whether or not Candela infringes those patents?" and he answered, "I do not know."  (*Id*. at 18:19-21).  Counsel for Candela made no objection to the question or answer.  Likewise, Mr. Amberg  was asked, "Q. Do you know whether or not the asserted claims of the '844 and/or '568 patents are invalid and/or unenforceable?" and he answered, "I do not."  (*Id*. at 19:22-20:3.)  Again, counsel for Candela made no objection.  Counsel's failure to object to these questions and answers at Mr. Amberg's deposition confirms that the questions were, in fact, squarely within the scope of the noticed topics.  Candela's argument that these questions were not "factual" but "legal conclusions" is wrong.  Infringement is a question of fact, as is Candela's validity argument of anticipation.  *See i4i Ltd. Partnership v. Microsoft Corp*., 598 F.3d 831, 849 (Fed. Cir. 2010) ("Infringement is a question of fact"); *Forest Laboratories, Inc. v. Ivax Pharmaceuticals, Inc*., 501 F.3d 1263, 1268

US1DOCS 7666595v2

Public Version – Portions of This Document Filed Under Seal Pursuant to Protective Order

(Fed. Cir. 2007) ("anticipation is a question of fact").  Candela's Motion to Strike the deposition testimony of its own 30(b)(6) witness also should be denied.

## III.    CONCLUSION

For these reasons, and as set forth fully above, Plaintiffs respectfully request that the Court deny Candela's motion to strike portions of the Bass and Petty Declarations.

Respectfully submitted,

PALOMAR MEDICAL TECHNOLOGIES, INC. and THE GENERAL HOSPITAL CORPORATION,

By their attorneys,

/s/ Dimple Chaudhary
Wayne L. Stoner (BBO # 548015)
Vinita Ferrera (BBO # 631190)
Kate Saxton (BBO # 655903)
Sarah Beigbeder Petty (BBO # 666485)
Dimple Chaudhary (BBO # 674854)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts  02109
(617) 526-6000
(617) 526-5000

Dated: September 27, 2010

US1DOCS 7666595v2

Public Version – Portions of This Document Filed Under Seal Pursuant to Protective Order

## CERTIFICATE OF SERVICE

I, Dimple Chaudhary, hereby certify that a copy of the foregoing document has been served upon all opposing counsel of record, by ECF on this 27th day of September, 2010.


   /s/ Dimple Chaudhary
Dimple Chaudhary

19